```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

         -against-                        MEMORANDUM AND ORDER
                                          06-CR-0550 (JS)
SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

              Defendants.
-----------------------------------X
APPEARANCES:
For Government:      Richard Thomas Lunger, Jr., Esq.
                     Christopher Allen Ott, Esq.
                     James Halleron Knapp, Esq.
                     James M. Miskiewicz, Esq.
                     United States Attorneys Office
                     610 Federal Plaza
                     Central Islip, NY 11722-4454
For Defendants:

Sandra Hatfield      Roland G. Riopelle, Esq.
                     Maurice H. Sercarz, Esq.
                     Sercarz & Riopelle, LLP
                     152 West 57th Street, 24th Floor
                     New York, NY 10019

David Brooks         John C. Meringolo, Esq.
                     Meringolo and Associates, P.C.
                     1790 Broadway, Suite 1501
                     New York, NY 10019

                     Zaki I. Tamir, Esq.
                     Gofer Tamir and Assoc.
                     55 Broad Street
                     New York, NY 10004

                     James M. LaRossa, Esq.
                     240 West End Avenue
                     New York, NY 10023

                     Kenneth Ravenell, Esq.
                     William H. Murphy, Jr., Esq.
                     The Murphy Firm
                     1 South Street, 23rd Floor
                     Baltimore, MD 21202
```

Richard Ware Levitt, Esq.
Yvonne Shivers, Esq.
Law Offices of Richard W. Levitt
148 E. 78th Street
New York, NY 10021

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

Defendant Sandra Hatfield has moved for a hearing, pursuant to United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991). For the foregoing reasons, that motion is GRANTED.

I. Ms. Hatfield's Right to a Monsanto Hearing

"A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Monsanto, 924 F.2d at 1195. Due process is particularly important when restraining funds that a defendant needs to pay counsel because "a defendant who is denied any pretrial opportunity to contest a restraint of assets needed to retain counsel is irrevocably deprived of that counsel." Id. Consequently, in Monsanto, the Second Circuit held that the Fifth and Sixth Amendments require an "adversary, post-restraint, pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the

indictment are properly forfeitable," to continue "a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte." Id. at 1203.

Here, the Government restrained Ms. Hatfield's assets ex parte. Docket No. 4. Thus, Ms. Hatfield has a right to a Monsanto hearing where she contest this ex parte deprivation if she shows that she needs the restrained funds to "retain counsel of choice." Id. Ms. Hatfield has met this burden. Ms. Hatfield's counsel, Ronald Riopelle of Sercarz & Riopelle LLP, has represented that his firm's outstanding bills to Ms. Hatfield exceed $1 million, while her unrestrained assets total only $113,604.32, and includes money that Ms. Hatfield needs to live on. In the past, Sercarz & Riopelle's bills have been paid (if belatedly) by Ms. Hatfield's former employer, Point Blank Solutions, Inc., under a fee advancement agreement. But Point Blank has now declared bankruptcy. So Sercarz & Riopelle LLP stands no realistic prospect of getting paid soon and, should it get paid eventually, it will likely recover only pennies on the dollar. In addition, Point Blank's bankruptcy likely repudiates the Company's obligation to pay Sercarz & Riopelle's bills going forward.

In response, the Government argues that Ms. Hatfield has "substantial unrestrained funds," she can use to pay her attorneys' fees, such as the bonus she received in January 2005,

3

and the excess cash she generated from selling DHB stock which the Government failed to restrain. But Mr. Riopelle has repeated represented that Ms. Hatfield previously spent these funds to meet other obligations, such as taxes and living expenses. The Court credits those representations. Moreover, the Court notes that, rather than seeking to refute Ms. Hatfield's claims, the Government appears to concede that Ms. Hatfield has previously "disposed of the bonus in addition to the $1.3 million" she generated from selling DHB stock.[1] Docket No. 966. Thus, the fact that Ms. Hatfield <u>once</u> had substantial assets says nothing about whether she has substantial assets today, nearly four years into a complex criminal prosecution. And the evidence before the Court indicates that Ms. Hatfield, in fact, lacks such assets – especially when considered along with her need to pay living expenses and attend trial far from home. Thus, the Court finds that Ms. Hatfield lacks meaningful assets that she could use to pay counsel.

The Court recognizes that, as a technical matter, Ms. Hatfield's current financial situation does not impact her ability to "retain counsel," <u>Monsanto</u>, 924 F.2d at 1203, since

---

[1] The Court reminds the Government that its role is not merely to prosecute criminals. It is to defend Americans' constitutional rights, including their rights to due process and retain counsel. The Government's extremist position throughout the <u>Monsanto</u> briefing suggests its failure to balance these sometimes dueling responsibilities.

4

she has already "retained" Sercarz & Riopelle LLP. But, on the facts of this case, it makes little difference. At the time Ms. Hatfield retained Sercarz & Riopelle LLP, the firm could not have reasonably anticipated that Ms. Hatfield's prosecution would last nearly four years (to date), culminate in a (likely) five month trial, or survive Point Blank's bankruptcy filing. And, as Mr. Riopelle has represented, his small firm cannot continue to appear on trial Monday through Thursday, week after week, without pay, while neglecting paying work. Indeed, Mr. Riopelle has represented that his firm stands about a month away from bankruptcy and that, as a practical matter, his firm would have to seriously restructure Ms. Hatfield's representation unless it receives a cash influx. Thus, while Ms. Hatfield's Sixth Amendment right to "retain" counsel may not be directly implicated, her inability to pay counsel implicates her equally important Sixth Amendment right to "use one's own funds to mount the defense that one wishes to present." U.S. v. Stein, 541 F.3d 130, 151 (2d Cir. 2008). There is no logical reason for Monstanto to apply to one kind of Sixth Amendment violation, but not another. Thus, notwithstanding Monstanto's language about "retain[ing]" counsel, the Court understands the decision as applying to Sixth Amendment rights generally.

II. Probable Cause

Now that the Monsanto hearing has been granted, the Government has the burden of showing probable cause that the assets it has restrained are "properly forfeitable."[2] See Monsanto, 924 F.2d at 1196, 1203; CFTC v. Walsh, 09-CV-1749, 2010 WL 882875, *3 (S.D.N.Y. 2010) (interpreting Monsanto as placing the burden on the Government); U.S. v. Millan-Colon, 836 F. Supp. 994, 1005 (S.D.N.Y. 1993) (same).

In the Superseding Indictment, the Government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Of these, only § 981(a)(1)(C) is a substantive statute delineating the scope of forfeitable assets. The other statute, § 2461(c), merely clarifies that § 981 applies to criminal cases and authorizes certain forfeiture procedures. Thus, for Monsanto purposes, the Government must show probable cause that Ms. Hatfield's presently retrained assets are subject to forfeiture under § 981(a)(1)(C). In its pre-hearing briefs, the Government attempts to do so by interpreting § 981(a)(1)(C) as authorizing forfeiture of the entire gross proceeds Ms. Hatfield reaped by selling DHB shares while possessing material inside information. The Court is not persuaded by this interpretation.

---

[2] Ms. Hatfield does not dispute that probable cause exists for the underlying criminal charges. Monsanto, 924 F.2d at 1203.

Section 981(a)(1)(C) subjects to forfeiture "Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [specified statutes] or a conspiracy to commit such offense."  The statute then provides two definitions of "proceeds," depending on the kind of offense committed.  "In cases involving illegal goods, illegal services, unlawful activities and telemarketing and health care fraud schemes, the term 'proceeds' means property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." § 981(a)(2)(A).  On the other hand, "[i]n cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. . ." § 981(a)(2)(B).

Thus, at the outset, the Court must determine whether the Government's criminal "case[]" against Ms. Hatfield "involv[es] illegal goods, illegal services [or] unlawful activities," or "lawful goods or lawful services that are sold or provided in an illegal manner."  The Court finds it is a mix of both.  Ms. Hatfield's alleged illegal trading, for instance, stems from her selling a lawful good (DHB stock) in an illegal

7

manner (while possessing material inside information).  But this alleged insider trading would not have been possible, or profitable, without many of the underlying frauds.  And these frauds, in turn, involved both "illegal services" (such as inventing non-existent inventory) and "unlawful activities" (e.g., wire and mail fraud, executing a scheme to defraud persons in connection with the sale of securities).  Thus, this "case" clearly "involv[es]" both "illegal services" and "unlawful activities."  And, accordingly, the Court applies § 981(a)(1)(A) to Ms. Hatfield's potentially forfeitable assets.

The question then turns to what § 981(a)(1)(A) means as applied to Ms. Hatfield.  The Government contends that it enables forfeiture of the entire "gross proceeds" Ms. Hatfield reaped by selling her DHB stock.  The Court disagrees.  Under § 981(a)(1)(A), "proceeds" does not mean any property bearing some factual nexus to a crime.  It means "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture." (emphasis supplied). Here, Ms. Hatfield's stock sales did not cause her to "obtain" "property."  It merely enabled her to transform one kind of property (stock) into another kind (cash) of equal market value. The actual alleged "illegal activity[]" that "result[ed]" in Ms. Hatfield "obtain[ing]" "property" were the underlying alleged frauds.  These alleged frauds, if committed, may have enabled

8

Ms. Hatfield to "obtain" "property" in two ways. First, the frauds may have caused DHB to compensate her based on the Company's fictional financial results, and thus led to DHB paying her too much (including too much equity compensation). And second, the frauds may have caused DHB's stock price to rise artificially, thereby increasing the value of Ms. Hatfield's DHB equity investment. As it relates to cash Ms. Hatfield generated by selling stock, this means that the following amounts are subject to forfeiture: (1) 100% of the cash Ms. Hatfield generated by selling stock that DHB awarded her based on the Company's fraudulent financial performance; and (2) for stock Ms. Hatfield otherwise obtained, the difference between the stock's inflated value, and what it would have sold for absent the fraud. This reasoning is consistent with a central purpose of criminal forfeiture: to prevent a defendant from enjoying the benefits of ill-gotten gains.[3]

---

[3] U.S. v. Venturella, 585 F.3d 1013, 1019 (7th Cir. 2009) ("forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains ... to the United States Department of Justice") (citations and quotations omitted); U.S. v. Boring, 557 F.3d 707, 714 (6th Cir. 2009) ("Forfeiture . . . is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity") (citations and quotations omitted); U.S. v. Hoover-Hankerson, 511 F.3d 164, 171 (D.C. Cir. 2007) ("Forfeiture is a means of forcing a criminal defendant to disgorge ill-gotten profits"); U.S. v. Casey, 444 F.3d 1071, 1073-74 (9th Cir. 2006) (holding that it is "clear that Congress intended criminal forfeiture provisions to eliminate profit from certain criminal activities" and imposing a money judgment equal to the defendant's "ill-gotten gains").

9

The Government's requested interpretation, in contrast, bares little relationship to a defendant's ill-gotten gains. Instead, the Government reads the statute as requiring a securities fraud defendant to forfeit 100% of the cash generated by selling stock, regardless of whether: (1) the defendant purchased the stock with his own money; and (2) the fraud had a meaningful impact on the stock price. And, depending on a case's facts, such an interpretation raises serious Constitutional concerns. See, generally, U.S. v. Bajakajian, 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998) (holding that forfeiture can violate the Excessive Fines clause). Suppose, for instance, that a Widget Corp. executive purchases 1000 Widget shares at $100 a share. A few days later, the executive uncovers material inside information indicating that Widget's stock is only worth $99 a share and sells his position at the same $100 a share price he originally paid. In so doing, the executive unquestionably violates federal securities laws. But his ill-gotten gain would be only $1000, representing the loss he avoided. Under the Government's theory, however, the executive would face forfeiture of his entire $100,000 investment, even though $99,000 of that stemmed from legitimate personal funds unrelated to fraud. Such a 100-1 ratio would be "grossly disproportionate" to the offense, and thus unconstitutional. Bajakajian, 524 U.S. at 339 (affirming

forfeiture of $15,000 as a penalty for taking $357,144 out of the country without the proper disclosures, and rejecting Government's argument that entire sum was forfeitable).[4]

Thus, not only does the Government's suggested interpretation not read the statute as a whole (by ignoring the phrase "as the result of the commission of the offense") it also fails the Supreme Court's requirement that forfeiture be "inherent[ly] proportional[]" to the offense. Id. And as such, it is untenable both on statutory construction and constitutional grounds. See U.S. v. Colavito, 19 F.3d 69, 71 (2d Cir. 1994) (the Court should "choose a constitutional reading of a statute over an unconstitutional one"). The Court's understanding, on the other hand, has neither of those problems. Accordingly, the Court interprets § 981 as it outlines above: Ms. Hatfield's property is subject to forfeiture only if she "obtain[ed]" it "as the result" of the alleged frauds. 18 U.S.C. § 981(a)(2)(A).

---

[4] The Court notes that the "net profit" analysis used in U.S. v. Naccio, 573 F.3d 1062, 1088 (10th Cir. 2010), could lead to even more bizarre results. Using such a framework, a securities fraud defendant who posted a capital loss on his illegal insider trades would owe nothing in forfeiture, even if his trading based on material inside information wrongfully enabled him to avoid a much larger loss.

11

## CONCLUSION[5]

Ms. Hatfield's motion for a Monsanto hearing is GRANTED. At this hearing, the Government must establish probable cause that the money it has restrained "result[ed]" from Ms. Hatfield's alleged illegal activities. Property that Ms. Hatfield would have obtained absent the fraud is not forfeitable.[6] To the extent that a bank account contains both forfeitable and non-forfeitable monies, the Government can continue to restrain only the forfeitable portion.[7]

The Court gives the Government until April 30, 2010 to put forth this probable cause, either through live testimony or declaration. Alternatively, the Government can avert the need for presenting such probable cause by agreeing to Ms. Hatfield's outstanding request for a "bridge loan," in the amount Ms. Hatfield requests.

---

[5] The Court is aware that the initial Pre-Trial Restraining Order found "reasonable cause" to restrain Ms. Hatfield's property. See Docket No. 4. Since entering that Order, the Court has had greater time to study the law concerning the applicable forfeiture statutes, and the facts of Ms. Hatfield's case. This Order reflects that greater scrutiny.

[6] It may, however, be subject to other kinds of recovery, such as restitution.

[7] See U.S. v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2d Cir. 1986) (commingled bank account is forfeitable "to the extent" it was funded by fraud, and a "pro rata share" of withdraws from such an account are also subject to forfeiture); United States v. $448,342.85, 969 F.2d 474, 476-77 (7th Cir. 1992) ("the presence of one illegal dollar in an account does not taint the rest").

SO ORDERED.

_____/s/_____
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         April 21, 2010