

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York  11722-4454*

June 15, 2010

<u>VIA INTEROFFICE MAIL and ECF</u>

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
1034 Federal Plaza
Central Islip, New York 11722

> Re:  United States v. Brooks and Hatfield
> <u>Cr. No. 06-550 (S-2)(JS)</u>

Dear Judge Seybert:

     The government writes in response to the defendants' letters submitted in connection with the motions to strike Travis Brooks's testimony or for a mistrial.  (<u>See</u> docket nos. 1098 ("Brooks Let.") and 1102 ("Hatfield Let.").)  Because the defendants raised no new facts that would change the Court's analysis in deciding to deny those motions, the Court should not disturb its June 7, 2010 bench decision ("6/7/10 Order").

     In her most recent submission, Hatfield moves to admit the S.E.C. deposition testimony of Vincente Fuster, pursuant to Rule 806, on the grounds that Travis Brooks's testimony relied entirely on the hearsay statements of Mr. Fuster, and Mr. Fuster's deposition testimony impeaches that testimony.  (<u>See</u> Hatfield Let. at 5-10.)  Hatfield is wrong on both accounts.  The government will address each in turn.

I.   TRAVIS BROOKS'S TESTIMONY DID NOT RELY ON HEARSAY STATEMENTS
     OF VINCENTE FUSTER

     Hatfield argues that Travis Brooks's testimony contains hearsay statements of Vincente Fuster.  (Hatfield Let. at 5-6.)  As an initial matter, for Rule 806 to apply, Travis Brooks's testimony that Hatfield seeks to impeach must be based on Mr. Fuster's statements, rather than his own.  If Travis Brooks's testimony is attributed to his own statements, opposed to Mr. Fuster, Rule 806 does not apply.  Because the government has demonstrated (and the

Court has found) that Travis Brooks's testimony did not rely on Mr. Fuster's hearsay statements, Hatfield's motion fails. (<u>See</u> 6/7/10 Order at 1-3.)

Specifically, Hatfield's contention that Travis Brooks's testimony regarding Point Blank inventory at PACA is based on hearsay statements of Mr. Fuster, rather than on personal knowledge, is without merit. (<u>See</u> Hatfield Let. at 5-6.) As the government noted in its opposition papers, Travis Brooks knew the costs of the Point Blank inventory at PACA. (<u>See</u> docket no. 1065 3.) Indeed, he developed those costs during his two month project creating a bill of materials (as discussed below and in docket no. 1065 at 3). And the Court agreed holding that

> Travis Brooks had personal knowledge 'that the amounts, the costs were correct.' Specifically, the Government, through Travis Brooks' testimony, showed that [the Point Blank inventory at PACA spreadsheet] was created using 'the inventory cost' that Travis Brooks developed, based on the cost he determined for the fabric, the collar, and the cutwork yokes.

(6/7/10 Order at 1-2.) Accordingly, Travis Brooks's testimony regarding Point Blank inventory at PACA is based on his own personal knowledge, not hearsay statements of Vincente Fuster.

Likewise, Travis Brooks's testimony about the bill of materials was based on personal knowledge. Indeed, as the government noted in its opposition papers, Travis Brooks spent months determining the cost of the Interceptor and its component parts. (<u>See</u> docket no. 1065 at 5-6.) In that regard, Travis Brooks testified about the numerous tasks he performed in connection with the bill of materials, that he adopted the bill of materials as his own and ultimately debated the accuracy of the costing in that bill of materials with Hatfield. (<u>Id</u>.) His testimony is therefore based on personal knowledge.

Moreover, as the Court held, both the Point Blank inventory at PACA spreadsheet (GX 4513) and the bill of materials (GX 4505-A and B) were business records, not statements of Mr. Fuster. (<u>See</u> 6/7/10 Order at 1-3.)

For the foregoing reasons, Travis Brooks's testimony did not contain hearsay statements attributable to Mr. Fuster, and therefore Rule 806 is not applicable.

3

## II. THE DEPOSITION TESTIMONY OF VICENTE FUSTER DOES NOT IMPEACH TRAVIS BROOKS'S TESTIMONY

Even if Travis Brooks's testimony includes hearsay statements of Mr. Fuster, the deposition testimony of Mr. Fuster does not impeach Travis Brooks's testimony on the subject of the bill of materials or Point Blank inventory at PACA. The government will address each argument in turn.

### A. Mr. Fuster's Testimony Does Not Impeach Travis Brooks's Bill of Materials Testimony

Hatfield argues that Mr. Fuster's deposition testimony impeaches Travis Brooks's testimony about the bill of materials. (Hatfield Let. at 6-7.) Specifically, she contends that "Fuster's testimony [before the S.E.C.] demonstrates that . . . Fuster had only a limited role in preparing the bill of materials." (Id. at 6.) In support of that argument, Hatfield extracts a quote from Mr. Fuster's deposition testimony in which he said that he was not involved in valuing the inventory. (Id. at 6-7.) But Hatfield misstates the testimony.

Indeed, Hatfield excluded the portion of the deposition where Mr. Fuster testified extensively about the things he did in connection with the bill of materials. (See, e.g., 3500-0100446-52, 3500-0100456-59, 461-68.) Specifically, Hatfield excluded the portion of the testimony where Mr. Fuster explained that: Travis Brooks enlisted his help with developing a bill of materials (3500-0100447); Mr. Fuster reviewed vendor invoices (id.); he visited the manufacturing floor to understand the manufacturing process (3500-0100462, 476-77); he had numerous conversations with manufacturing supervisors regarding the amount of time and raw materials that went into making an Interceptor (3500-0100447-48, 451-52, 462, 476-77); he examined invoices from Point Blank's subcontractors (3500-0100447); and he calculated the time it took to perform some manufacturing tasks using a stop watch (3500-0100477). Clearly, Hatfield's argument that Mr. Fuster "only had a limited role in preparing the bills of materials" is belied by the entirety of the deposition testimony, and thus does not impeach Travis Brooks's testimony.

Hatfield contends that Mr. Fuster's deposition testimony impeaches the work Travis Brooks did in connection with the bill of materials. (See Hatfield Let. at 6-7.) Even if that argument were correct, Rule 806 does not permit the use of Mr. Fuster's deposition to impeach Travis Brooks on this point. Rule 806 permits the use of hearsay to impeach statements that are attributed to a hearsay declarant. Travis Brooks's testimony

4

regarding his own involvement in developing the bill of materials cannot be attributed to Mr. Fuster.  Instead, those statements are plainly Travis Brook's statements.  Accordingly, Rule 806 does not apply.

Moreover, even if the statements regarding the work that Travis Brooks performed could be attributed to Mr. Fuster, Mr. Fuster's testimony does not impeach Travis Brooks's testimony on that subject.  Mr. Fuster was not asked about the specific tasks that Travis Brooks performed for the bill of materials.  Nor did he testify about that.

B.   Mr. Fuster's Testimony Does Not Impeach Travis Brooks's
Point Blank at PACA Testimony

Hatfield further argues that Mr. Fuster's testimony impeaches Travis Brooks's testimony regarding the costs per unit for Point Blank's inventory at PACA.  (Hatfield Let. at 7-9.)  That argument is equally meritless.  Mr. Fuster testified that he could not recall whether he was involved in determining the cost of Point Blank's inventory.  (See 3500-0100415, 418.)  The following excerpt from his testimony highlights that fact:

Q:   Do you recall ever working on the valuation of the PACA inventory and comparing your costs to the two-and-a-half million dollars schedule [GX 4513]?

A:   No . . .

Q:   Did you input any of the figures in the unit cost column?

A:   Unit cost?  I don't remember that part. I don't know if we took in-that number from our-I don't remember.

(3500-0100415, 418.)

Despite that Mr. Fuster could not recall whether he was involved in determining the cost of the Point Blank inventory at PACA, the questioning continued and the witness speculated about how the costs were determined.   The following exchange is an example of this

Q:   Did you input any of the numbers as far as you know on this page [GX 4513]?

5

```
A:   I'm going to guess that we put the unit
     cost on it, yes.

Q:   How was it that you arrived at the unit
     cost figure?

A:   I'm going to say it was on the building
     materials or the numbers that have been
     used for ages, at least until before I
     got there.  I don't recall.
```

(3500-0100420.)

        Putting aside that Mr. Fuster could not recall what role
he had in determining the cost of Point Blank's inventory at PACA,
his testimony about what cutwork collars and cutwork yokes were,
and their associated costs, is entirely consistent with Travis
Brooks's testimony.   Indeed, Mr. Fuster testified that cutwork
collars and cutwork yokes did not include ballistic material and
that the costs contained on GX 4513 for those items were
reasonable.  (3500-100422-24, 430-31.)  He testified, specifically,
that $6.35 for cutwork yokes and $0.39 for cutwork collars was
reasonable.  (3500-0100422-23.)   Moreover, Mr. Fuster testified
that he believed that the $2.2 million inventory balance on GX 4513
was accurate.  (3500-0100432.)  And he testified that Hatfield and
Pat Lennex's costing (contained on GX 4514 and 4515), and the
resulting total inventory balance, was inaccurate.  (3500-0100434-
35, 439-40, 443-45.)  All that testimony is consistent with Travis
Brooks's testimony.  (See Tr. 2582-83, 2613-14, 2705, 2711, 2715-
17.)  Accordingly, because Mr. Fuster's testimony does not impeach
Travis Brooks's testimony, it cannot be admitted pursuant to Rule
806.

        Finally, Mr. Fuster testified about a conversation that
Hatfield had with Ron Pierce, who was PACA's controller.  (Hatfield
Let. at 9.)   During that conversation, Hatfield asked Mr. Pierce
about inventory that was supposedly "sitting somewhere in [PACA's]
warehouse" for a customer.  (Id.)  Hatfield's attempt to introduce
this testimony pursuant to Rule 806 fails.  Those are not hearsay
statements of Mr. Fuster.  Instead, they are hearsay statements of
Hatfield and Ron Pierce.  In addition, Hatfield wants to interpet
the meaning of Hatfield's out of court statement beyond its plain
meaning.  (See Hatfield Let. at 9 ("While Fuster assumed that
Hatfield was inquiring about additional items of inventory not
included in the spreadsheet . . . It is more likely that Hatfield
was inquiring as to whether or not there was additional inventory
containing ballistic material on the premises at PACA.").)   Such
speculation is improper.  Either way, this testimony does not

6

satisfy the requirements of Rule 806.

III. CONCLUSION

       For the foregoing reasons, the government respectfully submits that the defendants' motions should be denied.

Respectfully submitted,

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By:         /s/
          Christopher C. Caffarone
          Assistant U.S. Attorney
          (631) 715-7868

cc:  All Parties (Via ECF)